HITHCOCK *vs.* M'GEHEE.

1. By the employment of an attorney at law to conduct a cause in court, a personal trust and confidence is reposed, which can not be delegated to another, but by consent of the person interested.

2. If a delegation thus made without authority, be afterwards assented to by the party interested, with full knowledge of the facts, it will be as binding on him, as if made by his authority.

3. Or, if information be seasonably given to the person interested, of such unauthorised delegation, and he do not dissent from it, he will be held to have acquiesced in it.—Silence in such a case will amount to a ratification.

4. But where no information of the delegation was given, until nearly three years had elapsed, and then only on application of the person interested; although no dissent was expressed— yet no ratification could be presumed.

Error to the Circuit court of Mobile.

Action on the case—tried before Judge *Harris.* The action was brought to recover the amount of two promissory notes, placed in the hands of defendant, for collection, as an attorney at law, which defendant alleged he had handed to a third person, also an attorney, to collect.

The defendant plead .the general issue, on which a verdict was rendered against him, for the amount, called for by the notes.

It was proved by a witness, that in March, eighteen hundred and twenty-four, there were placed in his (witness') hands, claims against Messrs. Armstrong, McGehee

Hitchcock *vs.* McGehee.

& Co., of which firm the late William McGehee was a partner, amounting to fifteen or twenty thousand dollars, either to secure or collect.   On the twentieth of March of that year, William McGehee, by two several deeds, transferred to witness, all his estate, both real and personal, which he admitted himself to possess, not previously encumbered, to secure in three equal annual payments, the claims then in the hands of witness.   Among the credits transferred by McGehee, was a note of Thomas McDaniel, said by McGehee, to be then in the hands of Messrs. Crawford & Hitchcock, then practitioners of the law—the one resident at St. Stephens, the other at Cahawha : that the note, the interest in which was transferred to witness, on the twentieth of March, eighteen hundred and twenty-four, was the same, in regard to which, suit was then pending, in the Circuit court of Mobile—the witness had no doubt.

In the deed, by which the note of McDaniel was transferred, it was stipulated, that if the brothers of McGehee, then residing in Georgia, should become his securities, for the debts intended to be secured by the deed, within a time limited, that then the notes, &c. transferred to witness, should be by him transferred to them.   They became his securities, within the time provided, and in August, eighteen hundred and twenty-four, witness transferred all notes, &c. to them, and delivered the evidence of transfer to their agent in Tuscaloosa.

Witness did not recollect, that Mr. Hitchcock ever gave him any other notice, of his having turned over for collection, to the late Judge Perry, of Cahawba, the note of McDaniel, than the following : in January, eighteen

hundred and twenty-seven, during the sitting of the Supreme court, at Tuscaloosa, either William McGehee, or witness at his request, enquired of Mr. Hitchcock, whether he had collected the note of McDaniel, or whether, and when, it would probably be collected. Mr. Hitchcock replied, that upon his leaving Cahawba, then his late residence, for Mobile, he ceased to practice law in the county of McDaniel's residence, and turned over to H. G. Perry, esq. his note for collection. He also remarked, that five hundred, or five hundred and twenty-five dollars, on the note, had been collected, by H. G. Perry—one hundred of which, had been retained by Mr. P., and the residue paid to himself. Mr. Hitchcock refused to pay over to McGehee, the sum received by him, from Mr. P.—claiming it, as he said, because of Mr. McGehee's indebtedness to him, for professional services, in the Circuit court of Tuscaloosa county, as also a further sum of something like five hundred dollars, for services in the same court. McGehee denied any indebtedness, and insisted that he had given his note to Crawford & Hitchcock, at St. Stephens, for five hundred dollars, in full for professional services, to be rendered by them; and that he had fully paid that note to one Hatch, their assignee. The parties separated without any adjustment, each somewhat dissatisfied, with the view taken of the professional services of Crawford & Hitchcock, by the other.

Whether McGehee and Hitchcock ever had another interview, or any letter was ever written on the subject, witness could not say. Witness thought McGehee, several times, made inquiries of Mr. P. about the collection of the note; and once, if no more, witness had a

conversation with Mr. P., at the request of McGehee, and expressed a wish that the same should be collected.— Whether McGehee ever did any thing further, to shew his assent to the substitution of Mr. P. for Crawford & Hitchcock, witness was not advised.

The proceeds of the note in question, were to go to Abner McGehee, of Montgomery county, who had advanced, as witness understood, largely for William McGehee, and William McGehee was his agent, in the collection of the claims transferred by him.

After the evidence closed, the defendant moved the court to charge the jury, " that if they believed that the defendant put the notes, mentioned in the declaration, into the hands of H. G. Perry, an attorney, for collection, and that the plaintiff on being informed thereof, did not dissent to the employment of said Perry, as an attorney, to collect the same—from his omitting to dissent to such transfer, they were authorised to presume his assent to the said Perry's employment."

This charge the court refused to give, and the refusal was here assigned as error.

*Thornton*, for plaintiff in error.
*Campbell*, contra.

*Thornton*, for the plaintiff in error—cited McGehee vs. Greer, decided at the present term, (page 537 of this volume,) to shew that the refusal of the court below, to charge as requested by defendant, was error.

*Campbell*, for the defendant in error.—Can an attorney

at law make a substitute, in the management of a cause entrusted to his care ?—(1 Liver. Agency, 54—Sugden on Pow. 175, 264.) The fact of ratification is a compound one, depending upon a variety of circumstances, where it is *not express.* The whole matter ought to have been submitted to the jury,—which was done.—(2 Peters, 132 —3 ib. 81—7 ib. 287.) Ratification of an agent's acts, in violation of his duty, can not be inferred from the silence of the principal, unless all the facts are known.— (9 Peters, 607.) Delay, in the communication of a departure from instructions, deprives the party of the right of construing silence into acquiescene.—(17 Mass. 103.)

ORMOND, J.—By the employment of an attorney at law to conduct a cause in court, a personal trust and confidence is reposed, which cannot be delegated to another, but by the consent of the person interested.

This proposition is not questioned, and is indeed conceded in the motion which is made in the court below. It is equally certain, that if a delegation thus made without authority, be afterwards assented to by the party interested, with full knowledge of the facts, it will be as binding on him as if made by his authority. It is also true, that if information be seasonably given to the person interested of such unauthorised delegation, and he do not dissent from it, he will be held to have acquiesced in it : both these principles in view, I will now proceed to examine the question.

The proposition contained in the charge, which the plaintiff moved for, is simply that if the defendant did not dissent from the employment of Perry to conduct the

suits, when informed of the fact by the plaintiff, that he must be presumed to have assented to it. To ascertain whether the charge was correct or not, we must consider it in reference to the testimony.

In February, eighteen hundred and twenty-four, the notes were put in the hands of the plaintiff for collection. In January, eighteen hundred and twenty-seven, when the plaintiff is applied to by the defendant for information about the suits, he informs the defendant that the claims have been transferred to Perry—that about five hundred dollars had been collected, of which the plaintiff had received four hundred, on account of some claim he asserted against defendant;—the remaining one hundred had been retained by Perry for his fee, and the residue was not collected. An angry altercation ensued, and the parties separated.

The plaintiff's counsel, by the charge moved for, have selected a single point of view presented by the testimony, and desired that the jury might be confined to that alone. Had the charge been given as asked for, a great many circumstances highly important to a proper understanding of the case, would have been taken from their notice.

For example, it was the duty of Hitchcock, in a reasonable time after placing the notes in the hands of Perry, to have given his client notice of the transfer. This notice is not given for nearly three years, and then on an application by the defendant to the plaintiff for information, at which time he is informed by the plaintiff, that he had, since the transfer, received from Perry a part of the money, a fact inconsistent with his having

constituted Perry the agent of the defendant. These facts were all necessary to be considered and weighed, to determine the liability of the plaintiff; yet by the motion of the plaintiff, they were all proposed to be taken from the consideration of the jury, and the merits of the case rested on a presumption which the jury were to draw from the existence of facts which, under all the circumstances, were of but little importance. Had the information been given early after the substitution, silence would undoubtedly have been a ratification. But to say, that because no dissent was expressed upon information received at such a length of time, and under the circumstances detailed in the testimony, that therefore, assent may be presumed from that fact alone, is a proposition I think not warranted by law. In this case, its manifest tendency was to prevent the jury from considering the whole case. These were facts in the case, from which the jury might have inferred that Perry was not the agent of the defendant, but of the plaintiff, and that in fact there had been no substitution. From taking any such view as this, the jury would have been deprived, by the charge moved for by the plaintiff.

I have not been referred to any case precisely in point, but I think the following cases are analagous—(Bank of the U. S. vs. Corcoran, 2 Peters' R. 132; Bell vs. Cunningham, 3 Peters' R. 81; Owings vs. Hall, 9 Peters' R. 629; Amory vs. Hamilton, 17 Mass. R. 109.

Let the judgment be affirmed.

COLLIER, C. J. and GOLDTHWAITE, J.—Not sitting.